(18 App. Div. 542.)

### BRADBURN v. SOLVAY PROCESS CO.

(Supreme Court, Appellate Division, Fourth Department.   June 12, 1897.)

CONTRACT OF EMPLOYMENT—CONSTRUCTION—PROVINCE OF JURY.

The S. Co. entered into a written contract with plaintiff to employ him at a certain salary, by which contract it was also provided that plaintiff should receive in addition a certain percentage upon his salary for every 1 per cent. in excess of 10 per cent. which should be paid as dividends to the stockholders. Some years after the making of this contract, the capital stock of the S. Co. was doubled. Plaintiff continued to participate in the profits on the same basis as before, but in ignorance, as he claimed, of the increase. He afterwards sued to recover the amount which he would have received had the same amount declared in dividends on the increased stock been paid on the original amount of stock. *Held*, that it was a question of fact for a jury to determine whether it was the intent of the parties, in entering into the contract, that the amount of capital on which plaintiff's interest should be computed was to remain the same.

Green and Follett, JJ., dissenting on the ground that alleged verbal agreements with the officers of the corporation could not be proved to interpolate a term into the written contract.

Appeal from trial term, Onondaga county.

Action by Joseph A. Bradburn against the Solvay Process Company. From a judgment of nonsuit, plaintiff appeals. Reversed.

The defendant is a domestic corporation, which was organized in the year 1878 with a capital of $1,500,000, and is engaged in manufacturing and selling a product known as "soda ash" at Geddes, or Solvay, in the county of Onondaga, in this state. On the 17th day of September, 1889, the plaintiff entered into a written contract with the defendant, by the terms of which the defendant agreed

to employ the plaintiff as an assistant chemist at a monthly salary of $100. This contract contained several covenants and provisions, among which was, the following: "(6) The Solvay Process Company, in consideration of the covenants herein entered into by the party of the second part, agrees to establish a method of participation in profits by certain of its officers and employés, and in particular by the said party of the second part, on the following terms: Those who take part in the participation shall be officers of the company, the heads of the departments, and such others as the trustees shall from time to time, by vote, admit. The distribution shall be calculated upon the salary of each participant, and shall be three per cent. (3%) upon such salary for every one per cent. (1%) in excess of ten per cent. (10%) which shall be paid as dividends to the stockholders. This participation shall be payable in the month of February in each year for the year ending the preceding 31st of December." It also provided that the plaintiff should give four weeks' notice of his intention to leave the employ of the defendant, and that the defendant might discharge the plaintiff upon payment to him of four weeks' wages. The salary of the plaintiff was thereafter increased from time to time until 1892, when it amounted to $2,000 per year; and for the years 1890 and 1891 a dividend of 30%. was declared upon the capital stock of the defendant, in which the plaintiff participated in the manner and to the extent stipulated in the written contract. On the 6th day of April, 1892, the capital stock of the defendant was increased from $1,500,000 to $3,000,000. Immediately thereafter a stock dividend of 100% was declared, and during the same year a further dividend of 30% upon the capital stock, as thus increased, was also declared. In each of the years 1893 and 1894 a further dividend of 15% was in like manner declared, in which the plaintiff participated upon the same basis as in previous dividends, but without any knowledge, as he testifies, that the capital stock had been increased. The plaintiff remained in the employ of the defendant under the written contract until the· latter part of May, 1894, when he was discharged, and the four weeks' additional salary contemplated by the contract was paid him.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Walter W. Magee, for appellant.
E. J. Page, for respondent.

ADAMS, J. The plaintiff rests his right to recover in this action upon the contention that the contract entered into between him and the defendant contemplated that the dividends in which he was to participate, as a part of the consideration for the services rendered by him, were to be computed upon the basis of the amount of capital stock which existed at the time the contract was executed, viz. $1,-500,000, and that, as a consequence of the doubling of the capital stock, he was deprived of one-half of the interest in the dividends thereafter declared, to which .he was entitled under ·the terms of the contract as they were understood by the parties when the contract was executed. It was conceded upon the trial that, if the plaintiff was correct in his contention, the amount owing him by the defendant was the sum of $3,200.01, but that, on the other hand, if it was within the contemplation of these parties when entering into this contract that the plaintiff's interests in the profits of the company might be diminished by an increase of the capital stock, he had received all he was entitled to. The single question, therefore, which was sought to be litigated in this action, was virtually whether, after entering into the contract with the plaintiff, by the terms of which the latter was to receive, by way of compensation for services, a certain share of the profits of the corporation, the defend-

ant could, without the plaintiff's consent, increase its capital stock, and thereby deprive him of a certain proportion of the profits which he would have been entitled to receive had the capital remained at the same amount as when the contract was entered into.    The question was decided adversely to the plaintiff's contention by the trial court, which at the close of the evidence directed a nonsuit.    It is insisted that in the disposition thus made of the case the learned trial court was in error, and that a question of fact, as to the intention and understanding of the parties respecting the basis upon which the plaintiff was to participate in the profits of the defendant, was presented, which should have been submitted to the jury, in which contention we are inclined to concur.    It is to be observed that the contract is silent respecting the amount of the capital upon which the plaintiff's share in the profits is to be determined; no allusion to that subject being made, further than it shall be computed at the rate of 3 per cent. of his salary for every 1 per cent. in excess of 10 per cent. of profits divided.    It is apparent, therefore, that, if a dividend of 20 per cent. were to be declared, the plaintiff would be entitled to receive an increase in his salary which would be equivalent to $600 per year; and it is likewise apparent that, if the capital stock were to be doubled, his interest in the dividend would necessarily be diminished just one-half.    For earnings which would justify a dividend of 20 per cent. upon $1,500,000 would, of course, warrant a dividend of only 10 per cent. upon $3,000,000. It is undoubtedly a fact that the stockholders of the defendant had the right at any time to increase the capital stock of the company, if steps to accomplish that object were taken in conformity to the requirements of the statute.    And it is equally certain that such right could not be affected by any contract which its officers might have executed.    Nevertheless the question still remains as to the understanding and intent with which the parties entered into this particular contract.    It is not to be denied that, if such intent could be fairly ascertained from the language of the contract itself, the question would necessarily resolve itself into one of law for the court to determine; but, in the absence of such a guide, we think a question of fact arises, which must be determined, like any other question of fact, by the acts of the parties, as well as by the circumstances and probabilities of the case.

We conclude, therefore, that the issue is one which should have been submitted to the jury, and but for the failure of the court so to do a new trial should be granted.    Judgment reversed, and a new trial granted, with costs to abide the event.

HARDIN, P. J., and WARD, J., concur.

GREEN, J. (dissenting).    Upon the trial the plaintiff offered to prove that, by a verbal agreement or understanding with an officer or officers of the company, the corporation obligated itself not to increase its capital stock during the continuance of its contract with plaintiff.    The corporation having doubled its capital stock, plaintiff now insists that he is entitled to a percentage in the profits on

the basis of the original capital stock of $1,500,000, and that all dividends declared after such increase of capital stock must be doubled in estimating his percentage of the profits. This is an important element to interpolate into a formal, written contract made with a corporation, by means of parol evidence of a conversation between the plaintiff and some of the officers of the corporation. The contract, as written, executed, and authenticated, evidenced the corporate assent and agreement to the terms and provisions therein expressed, while the prior verbal promises of some of its officers appear to be no more than individual promises, which are excluded from the formal contract entered into by the corporation itself. The evidence that a certain officer or officers of the corporation promised that the capital stock should remain the same during the time of plaintiff's indefinite agreement would be of no avail to charge the corporation, without some proof of the assent of the stockholders of the corporation. The contract being authenticated by the signatures of the treasurer and secretary, and by the corporate seal, we must assume that this was done by the direction or authority of the board of directors or trustees, and that this was the only contract entered into by the corporate body. Undoubtedly a statement of the amount of the capital stock was intentionally omitted from the contract as written, so as to avoid any contention of the character raised here. It was omitted from the original instrument, and we must assume that it was intentionally excluded, or that the corporation refused its assent to the stipulation. The purpose of the evidence offered was to interpolate into the contract, as written, a new and additional provision,—that the corporation should not increase its capital stock during the time of plaintiff's indefinite employment. The company would not be bound by such a stipulation or agreement, if made as claimed by plaintiff. We are unable to see how such evidence can be competent, and we are of the opinion that it was properly rejected by the learned trial justice, and that his rulings in respect thereto should be sustained. The judgment should be affirmed, with costs.

FOLLETT, J. (dissenting). The plaintiff offered to show that a few days before this contract was executed the president of the defendant, in its office, and in the presence of certain of its employés, "then and there promised this plaintiff that the capital stock should remain the same." This promise, if given, was not binding on the defendant, for it was beyond the power of its president, and of its entire board of directors, to make any such agreement. The power to increase the capital stock of a corporation lies, not with its president or board of directors, but with its stockholders acting pursuant to statute. It is an elementary rule that the officers or directors of a corporation cannot bind it, except when acting within the scope of their authority. There is no evidence in the case which shows that the president or any of the persons present at the interview were authorized to hire the plaintiff, or enter into any contract with him in respect to compensation. The contract was executed by the treasurer of the corporation and by the secretary, neither of whom

was present at the alleged interview.    Again, the litigants by their dealings have given construction to the contract.    After the capital was increased to $3,000,000, in April, 1892, the plaintiff received his share of the profits for 1892 and 1893, and for part of 1894, on the basis of that capitalization.    The plaintiff testified that he knew of the increase of the stock only from what he had heard; that he had no notice of it from the company.    In another part of his evidence he describes an interview which he says occurred in June, 1893, with the treasurer, in which the increase was talked about; but again, at a later period of the trial, his courage and knowledge had increased, and he testified that he did not know that the capital stock had been increased until two months after his discharge. It appears that a notice of the intention to increase was published in the Syracuse Journal for seven weeks, and it is hardly to be credited that this man, intelligent enough to receive this salary, worked for this corporation during these years, and knew nothing about the increase of its capital stock.    This subject would naturally and inevitably have been the subject of conversation among the employés of the corporation.    I am for affirmance of the judgment.